UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL FIORITO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DR. ANDERSON, et al.,<br><br>　　　　Defendants. | Case No. 5:18-cv-00506-JFW-KES<br><br>AMENDED REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |

This Amended Report and Recommendation ("R&R") is submitted to the Honorable John F. Walter, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**I.**

**INTRODUCTION**

Michael Fiorito ("Plaintiff"), a prisoner in the custody of the federal Bureau of Prisons ("BOP"), filed a pro se civil rights complaint. (Dkt. 1 ["Complaint"].) The Complaint alleges that an "ongoing denial of medical care span[ning] almost 3 years in 3 different states at 3 different BOP facilities" violated the Eighth

1

Amendment's ban on cruel and unusual punishment. (Compl. at 12.) The BOP Federal Correctional Facilities ("FCIs") at issue are FCI Gilmer in West Virginia, FCI Ashland in Kentucky, and FCI Victorville II in California. Plaintiff is currently housed at the United States Penitentiary ("USP") in Atlanta, Georgia. (Dkt. 14 at 1; Dkt. 15 at 21.)[1]

For the reasons explained below, it is recommended that the claims against Defendants at FCI Gilmer and FCI Ashland be severed from this action and transferred to the appropriate districts in West Virginia and Kentucky. It is also recommended that certain claims and Defendants be dismissed without leave to amend. This Amended R&R addresses Plaintiff's objections to the initial R&R. (Dkt. 15 ["Objs."].)

## II.
## LEGAL STANDARDS

### A. Screening under the Prison Litigation Reform Act ("PLRA").

Under 28 U.S.C. § 1915A, the Court must screen any "complaint in a civil action in which a prisoner seeks redress from a governmental entity, or from an officer or employee of a governmental entity" and must dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted" or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b).

A complaint may fail to state a claim for two reasons: (1) lack of cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990) (as amended). In determining whether a complaint states a claim on which relief may be granted, its

---

[1] <u>See also</u> BOP Inmate Locator, https://www.bop.gov/inmateloc/. The Clerk is directed to update Petitioner's current mailing address on CM/ECF to the Atlanta address reflected in his most recent filings.

2

allegations of material fact must be taken as true and construed in the light most favorable to plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). Further, where the plaintiff is appearing pro se, the court must construe the allegations of the complaint liberally and must afford the plaintiff the benefit of any doubt. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). However, the liberal pleading standard only applies to a plaintiff's factual allegations. "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

Moreover, with respect to a plaintiff's pleading burden, the Supreme Court has held that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 55 (2007) (internal citations omitted, alteration in original). "Factual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (internal citation and quotation marks omitted).

**B.      Deliberate Indifference under the Eighth Amendment.**

The "unnecessary and wanton infliction of pain" upon incarcerated individuals under color of law constitutes a violation of the Eighth Amendment and is actionable under 42 U.S.C. § 1983. Estelle v. Gamble, 429 U.S. 97, 104 (1976). The government must provide medical care for those whom it punishes by

incarceration, and cannot be deliberately indifferent to the medical needs of its prisoners. Id. "Deliberate indifference" can arise in the medical care itself, or when prison officials "deny, delay, or intentionally interfere with medical treatment." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988).

However, "[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." Estelle, 429 U.S. at 106. Furthermore, a difference of medical opinion cannot support a claim of deliberate indifference. Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "In other words, where a defendant has based his actions on a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference, as a matter of law." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Additionally, to establish an Eighth Amendment violation, a prisoner must satisfy the objective and subjective components of a two-part test. Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002). To meet the objective element of the standard, a plaintiff must demonstrate a serious medical need. Estelle, 429 U.S. at 104. A serious need exists if failure to treat the injury or condition could result in further significant injury or cause the unnecessary and wanton infliction of pain. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), overruled in part on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). A prison official is deliberately indifferent under the subjective element of the test only if the official knows of and disregards an excessive risk to inmate health and safety. Toguchi, 391 F.3d at 1057. This requires more than ordinary lack of due care. Farmer v. Brennan, 511 U.S. 825, 835 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

C. **Joinder of Multiple Defendants in the Same Action.**

In cases of misjoinder, "On motion or on its own, the court may at any time, on just terms, add or drop a party" or "sever any claim against a party." Fed. R. Civ. P. 21. "Because Rule 21 provides no standards to determine if parties are misjoined, courts look to Rule 20 for guidance." Dunbar v. Medtronic, Inc., No. 14-01529-RGK-AJW, 2014 WL 3056081 at *2, 2014 U.S. Dist. LEXIS 94918 at *4 (C.D. Cal. June 25, 2014). Rule 20 provides that defendants may be joined in one action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). "[T]he mere fact that all Plaintiffs' claims arise under the same general law does not necessarily establish a common question of law or fact." Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997).

D. **Dismissal or Transfer Where Venue is Improper.**

Defendants may waive improper venue, but a court may sua sponte consider whether venue is proper if the defendants have not yet appeared in the action. Costlow v. Weeks, 790 F.2d 1486, 1488 (9th Cir. 1986). 28 U.S.C. § 1391, which governs venue for civil actions filed in the federal courts, provides that an action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought

as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b).

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Thus, where venue is improper, the "court has some discretion in choosing between these two options [dismissal or transfer], though generally it is preferred to transfer the case rather than dismissing it altogether." Abrams Shell v. Shell Oil Co., 165 F. Supp. 2d 1096, 1103 (C.D. Cal. 2001). "[D]istrict courts who dismiss rather than sever must conduct a prejudice analysis, including loss of otherwise timely claims if new suits are blocked by statutes of limitations." Rush v. Sport Chalet, Inc., 779 F.3d 973, 975 (9th Cir. 2015) (quotation marks and citation omitted).

Transferring claims that are subject to dismissal under PLRA screening would not be in the interest of justice under § 1406(a). See, e.g., Doe v. Mitchell, No. 09-00016, 2009 WL 838050 at *4, 2009 U.S. Dist. LEXIS 29928 at *11(D. Nev. Mar. 26, 2009) ("Doe's claims against Defendants Stickney and Lindsay are legally untenable, and should be dismissed rather than transferred."); Minnfee v. Assoc. Atty. Gen., No. 07-399, 2007 WL 1287880 at *2, 2007 U.S. Dist. LEXIS 31887 (W.D. Wash. May 1, 2007) ("[I]t would not be 'in the interests of justice' to transfer this action to a different venue because plaintiff has not adequately alleged in his complaint any viable cause of action under § 1983, because it is not entirely clear which district would be the proper district to receive a transfer, and because transferring the action might allow plaintiff to circumvent filing requirements imposed upon him by other federal district courts.").

# III.

# ALLEGATIONS IN THE COMPLAINT

At this stage of the case, the well-pleaded factual allegations in the Complaint are assumed to be true. Love, 915 F.2d at 1245. The Complaint alleges as follows:

Plaintiff is a prisoner in federal custody. Prior to July 2015, Plaintiff was housed at FCI Pekin in Illinois. (Compl. at 12 ¶ 2.) There, an orthopedic surgeon named Dr. Clark treated him for ankle pain. (Id.) Dr. Clark gave Plaintiff cortisone shots in his left ankle and "wrote an order that the shots should be administered every 90 days[.]" (Id.) He also recommended that Plaintiff see a foot and ankle specialist. (Id.)

## A.  Defendants at FCI Gilmer in West Virginia.

Between approximately July 2015 and July 2016, Plaintiff was housed at FCI Gilmer in West Virginia. (Compl. at 12 ¶ 2.) He sought medical treatment for depression, post-traumatic stress disorder ("PTSD"), and traumatic brain injury ("TBI"). (Id.) Medical staff at FCI Gilmer refused to give Plaintiff cortisone shots, prescribe Provigil for his depression and PTSD, or give him a lower tier bunk. (Compl. at 12-14 ¶¶ 6, 9-10, 12, 22, 24.)

After approximately 10 months, Plaintiff was seen by a foot and ankle specialist, Dr. Persaad, who recommended Plaintiff receive pain relief injections in his ankle every 90 days, and prescribed an ankle brace and Voltran gel. (Compl. at 13-14 ¶¶ 11, 14-17, 23.) Medical staff at FCI Gilmer at first refused to order the Voltran gel on the grounds that it was "non-formulary and too expensive," but eventually ordered it for Plaintiff after Dr. Persaad insisted. (Compl. at 14 ¶¶ 18-20.)

The Complaint names the following Defendants at FCI Gilmer: (1) Dr. Anderson, (2) Hospital Services Administrator ("HSA") Weaver, and (3) Doe Defendants "responsible for scheduling Plaintiff's treatments and trips to see the

foot and ankle specialist in West Virginia." (Compl. at 3.)

**B.     Defendants at FCI Ashland in Kentucky.**

In August 2016, Plaintiff was transferred to FCI Ashland. (Compl. at 15 ¶ 28.) Medical staff at first refused to provide pain relief injections "stating they were too expensive," but eventually did more than a year later, in October 2017. (Compl. 15, 17 at ¶¶ 30, 53.) In November 2017, medical staff "declared that Plaintiff's left ankle was fine" and thereafter refused to treat it. (Compl. at 16-17 ¶¶ 45, 48-52.)

Staff at the prison also assigned Plaintiff to work in food service to retaliate against him for filing grievances, even though this was against medical work restrictions that had previously been recommended for Plaintiff. (Compl. at 15-16 ¶¶ 33-41.) When he fell and injured himself at work, his supervisor "refused to report it or allow Plaintiff to go to medical" and "never took any action to ensure Plaintiff's safety." (Compl. at 15 ¶¶ 36-37.)

The Complaint names the following Defendants at FCI Ashland: (1) Dr. Thomas Love, (2) Dr. Gomez, (3) Unit Manager Edwards, and (4) Plaintiff's supervisors in food service, Ms. Brown and Mr. Stewart. (Compl. at 4-6.)

**C.     Defendants at FCI Victorville in California.**

In February 2017, Plaintiff was transferred to FCI Victorville. (Compl. at 19 ¶ 73.) "Plaintiff went to sick call 10 times requesting help and to see the prison doctor." (Compl. at 19 ¶ 76.) Defendant physician's assistants ("PAs") Hoang and Coleman refused Plaintiff's requests for Provigil, a new ankle brace, pain relief shots, Voltran gel, and a referral to an orthopedic surgeon "for no reason and without an examination." (Compl. at 19 ¶¶ 77-79.) After hearing the same requests, Defendant Dr. Peikar initially "stated he would look into it" but did not, and later told Plaintiff, "[W]e don't have the staff or funds to see everyone." (Compl. at 20 ¶¶ 81-82.)

Plaintiff eventually purchased an ankle brace from an outside vendor and had

it shipped to the prison. (Compl. at 20 ¶ 90.) When the brace arrived, Plaintiff was in the Special Housing Unit ("SHU"),[2] and Defendants Poyner and Dr. Peikar "refused to let Plaintiff have the ankle brace in the [SHU] stating it was plastic and could be used as a weapon," even though other inmates in the SHU "were allowed plastic razors, radios, pill bottles, and plastic wheelchairs as well as plastic spoons and trays." (Compl. at 21 ¶ 94.) When Plaintiff pointed this out, HSA Poyner "replied he didn't care and would not allow other staff to give Plaintiff his ankle brace." (Compl. at 21 ¶ 94.)

Plaintiff was later placed "in a wheelchair due to his inability to put any weight on his … ankle." (Compl. at 20 ¶ 83.) Plaintiff requested medical treatment from Dr. Bueno for pain and depression, but—without examining Plaintiff or his medical records—Dr. Bueno told Plaintiff to "deal with it" and do "exercises." (Compl. at 20 ¶ 84, 86.) Dr. Bueno also did not authorize a special mattress for lower back pain, as Plaintiff requested. (Compl. at 20 ¶ 87.)

Warden Entzel "knew of all of the Defendants' illegal conduct outlined in this Complaint because [Plaintiff] personally told her about her staff's actions on several occasions and for no penological reason Warden Entzel took no curative actions … which caused Plaintiff to suffer more pain needlessly and caused him severe mental anguish." (Compl. at 21 ¶ 96.)

The Complaint names the following Defendants at FCI Victorville: (1) Dr. Peikar, (2) Dr. Bueno, (3) PA Coleman, (4) PA Hoang, (5) Warden Entzel, (6) HSA Poyner, and (7) Doe Defendants, "sick call schedulers and those who screened the grievances for medical staff." (Compl. at 7-10.)

---

[2] Although the Complaint states that Plaintiff was placed in the SHU in retaliation for his filing of grievances against staff at FCI Victorville (Compl. at 21 ¶ 92), he does not appear to be bringing a claim for First Amendment retaliation based on his placement in the SHU.

## D. Defendants in Washington, DC.

Plaintiff names the United States as a Defendant. (Compl. at 9 ¶ 4.) Plaintiff also brings a claim against Ian Connor, "Washington D.C. Administrative Remedy Coordinator," as well as "John and Jane Does in his office." (Compl. at 21 ¶ 97.) Plaintiff alleges, "Over a 2 year period on approximately 12 occasions Plaintiff sent [grievances] to Connor requesting adequate medical care, diagnosis and treatment for his illness[es] and sought help from the BOP's Central Office for the issues outlined in this Complaint." (Compl. at 22 ¶ 101.) "Connor denied every [grievance] submitted by Plaintiff" and "took no action." (Compl. at 22 ¶ 102.) The John and Jane Does are named "in the event Connor claims he delegates the reading, writing and/or answering of [the grievances] to other employees, an assistant or contractor." (Compl. at 22 ¶ 103.)

## E. Relief Sought.

Plaintiff seeks both equitable relief and monetary damages. He seeks: (1) a declaratory judgment that all Defendants violated Plaintiff's Eighth Amendment rights, (2) "an injunction against the United States to provide Plaintiff with adequate medical care for the medical issues he's outlined," (3) "an injunction preventing Defendant Connor and his staff from reviewing and deciding any [grievances] sent to their office by Plaintiff in the future" and requiring "that every [grievance] submitted by Plaintiff to Defendant Connor between July 2015 and November 2017 be re-reviewed and decided by an independent party." (Compl. at 24.) Additionally, Plaintiff seeks compensatory and punitive damages, as well as the costs of bringing the present action. (Id.)

## IV.

## DISCUSSION

### A. Plaintiff's Claims against Medical Providers at Multiple Prisons are Not Properly Joined in a Single Action.

Multiple courts have found that, where a federal inmate brings claims of

deliberate indifference to his serious medical needs against prison officials at different federal prisons, the claims are not properly joined in a single action. See, e.g., Fisher v. United States, No. 14-6499-MMM-RNB, 2015 WL 5723638 at *4, 2015 U.S. Dist. LEXIS 131689 (C.D. Cal. June 18, 2015), R&R approved, 2015 WL 5705926, 2015 U.S. Dist. LEXIS 131666 (C.D. Cal. Sept. 29, 2015); Sheffield v. Rios, No. 09-01851-JLT-PC, 2012 WL 928717 at *5, 2012 U.S. Dist. LEXIS 36804 at *12-13 (E.D. Cal. Mar. 19, 2012); Peterson v. United States, No. 14-134, 2015 WL 278093 at *7, 2015 U.S. Dist. LEXIS 7461 at *17 (E.D. Ky. Jan. 22, 2015). As one court explained:

> [P]laintiff's Bivens[3] claims against the USP-Lompoc defendants arise from the medical care that plaintiff received while incarcerated at USP-Lompoc from April 2012 until his transfer in October 2014. Plaintiff's Bivens claim against Dr. Lin, however, arises from separate actions taken by Dr. Lin in providing medical care after plaintiff was transferred to FCI-La Tuna in October 2014. … All of plaintiff's interactions with the USP-Lompoc defendants occurred prior to his transfer, and plaintiff's [complaint] does not purport to allege that any USP-Lompoc defendant had any personal involvement in his medical care once he had arrived at FCI-La Tuna. Further although plaintiff alleges that the defendants at the two prisons each provided inadequate medical care, the alleged incidents occurred at different times, at different prisons, and involved different medical providers.

Fisher, 2015 WL 5723638 at *4, 2015 U.S. Dist. LEXIS 131689 at *11-12; see also Sheffield, 2012 WL 928717 at *5, 2012 U.S. Dist. LEXIS 36804 at *12-13 ("Here, though [the plaintiff] claims repeated failures to provide him adequate medical care, each incident of inadequate medical care occurred for different reasons, [and] the

---

[3] Bivens v. Six Unknown Agents, 403 U.S. 388 (1971).

11

events occurred over many years at different prisons at the hands of different defendants.").

This logic is equally applicable to Plaintiff's claims. Between July 2015 and July 2016, he was housed at FCI Gilmer in West Virginia, where he was allegedly denied adequate medical care by Defendants Anderson and Weaver. (Compl. at 12-14.) Between August 2016 and February 2017, Plaintiff was housed at FCI Ashland in Kentucky, where he was allegedly denied adequate medical care by Defendants Gomez, Love, Edwards, Stewart, Brown, Keller, Guthrie, and Bishop. (Id. at 15-19.) In February 2017, Plaintiff was transferred to FCI Victorville II, where he was allegedly denied adequate medical care by Defendants Peikar, Bueno, Coleman, Hoang, Poyner, and Entzel. (Id. at 19-21.)

There are similarities between some of Plaintiff's claims, because Plaintiff was seeking treatment for alleged ongoing medical conditions (depression, PTSD, ankle and back pain, and rheumatoid arthritis) and he often requested, and was refused, the same types of treatment (cortisone shots, referral to an orthopedic specialist, and an ankle brace). Yet these refusals occurred at different times, in different places, and under different circumstances. The details of these circumstances will be paramount to determining the validity of Plaintiff's Eighth Amendment claims.

Plaintiff attempts to tie all of the claims together by alleging a conspiracy between all of the Defendants. (Compl. at 23.) "To state a claim for a conspiracy to violate one's constitutional rights … the plaintiff must state specific facts to support the existence of the claimed conspiracy." Burns v. Cty. of King, 883 F.2d 819, 821 (9th Cir. 1989). Plaintiff fails to allege facts plausibly demonstrating the existence of such a conspiracy. He alleges:

> All of the Defendants work for the same organization [the BOP]; they all have access to Plaintiff's medical and mental health care records stored at other prisons; all Defendants are/were aware of Plaintiff's

> serious, well documented medical problems; [a]ll Defendants were aware of recommendations of specialists Dr. Clark in Illinois and Dr. Persaad in West Virginia and chose to ignore those doctors' orders; Plaintiff made the same medical complaints to all the Defendants at each prison reference in this Complaint[.] [I]t is thus impossible that the Defendants were unaware of Plaintiff's ongoing, serious medical injuries.

(Id. at 23 ¶ 109.)

In other words, Plaintiff alleges that all Defendants worked for the BOP, had access to Plaintiff's medical records, and reached similar conclusions about what medical care Plaintiff should receive. This is insufficient to demonstrate that Defendants at different institutions in different states were part of a conspiracy to violate his constitutional rights, such that they should all be considered part of the same transaction or occurrence of purposes of Rule 20. Plaintiff does not allege any facts indicating, for example, that Defendants at different prisons ever directly communicated with one another or that they shared some common desire to conspire against him. See Cox v. Ashcroft, 603 F. Supp. 2d 1261, 1271 (E.D. Cal. 2009) ("Plaintiff's complaint is completely devoid of any factual allegations that the … Defendants had an agreement or 'meeting of the minds' to conspire to violate Plaintiff's constitutional rights."); see also Robben v. Norling, No. 16-2699, 2017 WL 3315250 at *3, 2017 U.S. Dist. LEXIS 122824 at *6 (E.D. Cal. Aug. 3, 2017) (claim of conspiracy "requires allegations of specific facts showing that two or more persons intended to accomplish an unlawful objective of causing plaintiff harm and took some concerted action in furtherance thereof"). Cf. Twombly, 550 U.S. at 556 (stating a claim for conspiracy under the Sherman Act "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made"; reasoning that "[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for

enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement").[4]

Thus, the claims against Defendants at different prisons should be severed, such that the claims against staff at FCI Gilmer, FCI Ashland, and FCI Victorville II are brought in three separate actions.

**B.** **Venue is Improper as to the West Virginia and Kentucky Defendants, and Those Claims Should be Transferred.**

For the claims against staff at FCI Gilmer, the proper venue is the Northern District of West Virginia. For the claims against staff at FCI Ashland, the proper venue is the Eastern District of Kentucky.[5] Those are the judicial districts where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). The Complaint alleges that Plaintiff was denied proper medical care in those districts, where Plaintiff resided and the relevant Defendants worked. Venue is improper in the Central District of California as to these Defendants because no allegations in the Complaint indicate that any of these Defendants reside here, that any events giving rise to these claims occurred here, or that any of these Defendants have any contacts with California that would subject them to personal jurisdiction here. See generally Goodyear Dunlop Tires Operations v. Brown, 564 U.S. 915, 923 (2011) (to exercise personal jurisdiction

---

[4] To the extent Plaintiff wishes to amend his Complaint to "recharacterize[]" and "reconfigure[]" his conspiracy count "to include only the Victorville Defendants" (Objs. at 15-16), the Magistrate Judge will separately set a deadline to file a First Amended Complaint after the District Judge has decided whether or not to adopt the Amended R&R.

[5] See BOP, FCI Gilmer, https://www.bop.gov/locations/institutions/gil/ (FCI Gilmer is located in Gilmer County); 28 U.S.C. § 129 (Gilmer County is in the Northern District of West Virginia); BOP, FCI Ashland, https://www.bop.gov/locations/institutions/ash/ (FCI Ashland is in Boyd County); 28 U.S.C. § 97 (Boyd County is in the Eastern District of Kentucky). The Court takes judicial notice of the locations of the prisons. See generally Fed. R. Evid. 201.

14

over a nonresident defendant, the defendant must have at least "minimum contacts" with the state, such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice").

Transfer of the claims against the FCI Gilmer and FCI Ashland Defendants to the appropriate districts, rather than dismissal, is in the interests of justice. See 28 U.S.C. § 1406(a). The claims are not clearly deficient on their face[6] and transfer, rather than dismissal, would avoid any timeliness problem which requiring Plaintiff to re-file the claims might create.

## C. Claims against Ian Connor and the Doe Defendants in Washington, DC Should be Dismissed.

As noted above, Plaintiff alleges that Ian Connor, the BOP's Washington D.C. Administrative Remedy Coordinator, and/or Connor's staff, denied 12 administrative appeals filed by Plaintiff. (Compl. at 21-22 ¶¶ 97-103.) These allegations fail to state a claim for relief. As the Seventh Circuit has explained:

> [A] brief word about George's claims against the defendants who handled his administrative protests concerning the events covered by the complaint. … George's argument on the merits is that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself. That proposition … is not correct. Only persons who *cause or participate in* the violations are responsible. … Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of

---

[6] This order is not meant to preclude further screening of these claims by the transferee courts under § 1915A of the PLRA, should the transferee courts believe appropriate.

| | |
|---|---|
| 1 | misconduct does not. |

George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) (emphasis added). Courts in this circuit generally agree that denying an inmate appeal does not, by itself, lead to liability. See Phillipi v. Patterson, No. 13-01514, 2014 WL 11774836 at *3, 2014 U.S. Dist. LEXIS 105865 at *7 (E.D. Cal. Aug. 1, 2014) (citing George for the proposition that "denial of an inmate appeal … does not state a cognizable constitutional violation"), aff'd sub nom. Phillippi v. Patterson, 599 F. App'x 288 (9th Cir. 2015); Baldhosky v. Hubbard, No. 12-01200, 2018 WL 1392058, at *3, 2018 U.S. Dist. LEXIS 45667 at*8-9 (E.D. Cal. Mar. 20, 2018) (dismissing "claims alleging that individuals who[se] identities are apparently presently unknown reviewed his health care services requests and failed to act in violation of his constitutional rights," citing George, and noting that "denial of a prisoner's administrative requests generally does not cause or contribute to any underlying constitutional violation" unless prison administrators "willfully turn a blind eye to constitutional violations being committed by subordinates"); Thomas v. Matevousian, No. 17-1592, 2018 WL 1452261 at *4, 2018 U.S. Dist. LEXIS 46663 at*9 (E.D. Cal. Mar. 21, 2018) ("Actions in reviewing a prisoner's administrative appeal generally cannot serve as the basis for liability in a section 1983 action."); Hernandez v. Cate, 918 F. Supp. 2d 987, 1018 (C.D. Cal. 2013) (dismissing claims "based solely on [the defendants'] role in the inmate appeals process" but denying motion to dismiss claims plausibly suggesting that other defendants "were involved in authorizing or implementing the modified programs at issue"). But see Stevenson v. Beard, 16-03079, 2018 WL 1963674 at *9, 2018 U.S. Dist. LEXIS 70639 at *25 (S.D. Cal. Apr. 26, 2018) ("Presumably, reviewers at each level of appeal conduct personal reviews of the appeals before drafting a letter either granting or rejecting the appeal. This personal review of the appeal amounts to personal participation in the Plaintiff's alleged constitutional injury…."). Courts in Washington, DC—where these claims would likely be transferred, were the Court

to transfer them rather than dismiss them under § 1406(a)—have reasoned likewise. See, e.g., Gonzalez v. Holder, 763 F. Supp. 2d 145, 150 (D.D.C. 2011) ("[A] prison official's decision on an inmate grievance with respect to an alleged constitutional violation does not itself render him personally liable under Bivens.").

The Complaint alleges that Connor and the Doe Defendants are in Washington DC, not at the prisons where the alleged constitutional violations occurred. Their only connection to the instant dispute was their review and denial of the grievances Plaintiff sent them. Plaintiff argues that the above-cited cases are distinguishable because he sent Defendant Connor more than a dozen grievances and letters over a period of three years, and because Connor allegedly "had the power to compel the medical providers/defendants to provide Plaintiff with proper medical care…." (Objs. at 6-7.) The number of grievances Plaintiff filed does not change the Court's analysis of this issue. Plaintiff has not pled any facts supporting the contention that Connor, who is identified as an "Administrative Remedy Coordinator at BOP Central Office" (Compl. at 11 ¶ 5), had the kind of supervisory authority over the other Defendants as in the case law Plaintiff cites. Compare Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006) ("*As prison administrators*, Dr. Peterson and Cheryl Pliler are liable for deliberate indifference when they knowingly fail to respond to an inmate's requests for help.") (emphasis added); see Hernandez, 918 F. Supp. 2d at 1017-18 (dismissing claims that were "based solely on [the defendants'] role in processing plaintiff's appeals" but denying motion to dismiss claims against the warden who had "authority and discretion to justify the modified programs at issue and deny plaintiff [administrative] relief").[7]

---

[7] To the extent Plaintiff's objections rely on Padilla v. Kernan, No. 16-2339, 2018 U.S. Dist. LEXIS 3218 at *18-19, 2018 WL 325041 at *7 (S.D. Cal. Jan. 8, 2018), the Court respectfully disagrees with the reasoning of that case and of Stevenson, cited above, and agrees with the reasoning of the other district court cases cited above.

Because the Complaint does not plausibly allege that the Washington, DC Defendants who processed Plaintiff's grievances caused or participated in the alleged constitutional violations, the Complaint fails to state a claim against them.

D. **Claims for Monetary Damages against Individual Defendants in their Official Capacity Should be Dismissed.**

The Complaint alleges that Defendants "denied Plaintiff adequate medical care and as a result subjected him to cruel and unusual punishment" under the Eighth Amendment. (Compl. at 24 ¶ 1.) He attempts to bring an Eighth Amendment claim against the United States and against each of the individual Defendants in both their individual and official capacities. (Compl. at 3-11.) He seeks both injunctive relief and damages. (Compl. at 24.)

In Bivens, "the Supreme Court held that an action *for money damages* may be brought against federal agents acting under color of their authority for injuries caused by their unconstitutional conduct." Vaccaro v. Dobre, 81 F.3d 854, 856 (9th Cir. 1996) (emphasis added). Bivens attempted to "fill[] a gap in cases where sovereign immunity bars a damages action against the United States" and injunctive relief would not "obviate the harm" at issue. Solida v. McKelvey, 820 F.3d 1090, 1094 (9th Cir. 2016). "[A] Bivens action is, by definition, against defendants in their individual and not their official capacity." Vaccaro, 81 F.3d at 856. "This is because a Bivens suit against a defendant in his or her official capacity would merely be another way of pleading an action [for damages] against the United States, which would be barred by the doctrine of sovereign immunity." Consejo de Desarrollo Economico de Mexicali, A.C. v. United States, 482 F.3d 1157, 1173 (9th Cir. 2007); see also Solida, 820 F.3d at 1095 ("An action against an officer, operating in his or her official capacity as a United States agent, operates as a claim against the United States.").

Thus, to the extent Plaintiff is seeking monetary damages against the United States and against the individually named Defendants in their official capacity for

violations of the Eighth Amendment, the Complaint fails to state a claim.

**E.    Claims for Malpractice or Negligence against the United States.**

In the prior R&R, the Court noted that the Complaint contained isolated allegations that the United States was liable for the "malpractice and negligence" of the other Defendants (Compl. at 9, 22 ¶¶ 4, 104), but the majority of the Complaint asserted violations of Plaintiff's Eighth Amendment rights. The Court noted that Plaintiff did not appear to be attempting to bring claims against the United States under the Federal Tort Claims Act ("FTCA"), particularly since the FTCA's waiver of sovereign immunity does not extend to constitutional claims. (Dkt. 7 at 17-18.)

In his objections, Plaintiff explains that he does wish to bring FTCA claims against the United States "related to nearly all of the claims contained in his complaint." (Objs. at 13 ¶ 55.) He contends that the United States "is a proper defendant in this case due to the malpractice and negligence of its Federal Employees" and clarifies that he "is <u>not</u> alleging any constitutional violations against the U.S. nor is he including the U.S. in the <u>Bivens</u> section of his complaint." (<u>Id.</u> at 13 ¶¶ 59-60.)

The proper venue for an FTCA action against the United States is the judicial district: (1) where the plaintiff resides, or (2) wherein the act or omission complained of occurred. 28 U.S.C. § 1402(b). Plaintiff currently resides at the USP Atlanta. The acts or omissions he complains of occurred in California, West Virginia, and Kentucky. To the extent his FTCA claims against the United States are based on the actions of the California Defendants, they are properly brought in this action. To the extent his FTCA claims are based on the actions of the West Virginia and Kentucky Defendants, however, they are not properly brought in California. The latter FTCA claims should be severed and transferred to the same judicial districts as Plaintiff's related <u>Bivens</u> claims.

//
//

## IV.
## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order:

(1) approving and accepting this Amended R&R;

(2) dismissing without leave to amend the claims against Ian Connor and the Doe Defendants located in Washington DC;

(3) dismissing without leave to amend the damages claims against the individual Defendants in their official capacities;

(4) severing Plaintiff's <u>Bivens</u> claims against Defendants Dr. Anderson, HSA Weaver, and the Doe Defendants at FCI Gilmer, as well as the FTCA claims against the United States based on these Defendants' behavior, and transferring them to the Northern District of West Virginia; and

(5) severing Plaintiff's <u>Bivens</u> claims against Defendants Dr. Thomas Love, Dr. Gomez, Unit Manager Edwards, Ms. Brown and Mr. Stewart, as well as the FTCA claims against the United States based on these Defendants' behavior, and transferring them to the Eastern District of Kentucky.

DATED: <u>September 24, 2018</u>

*Karen E. Scott*
_____
KAREN E. SCOTT
United States Magistrate Judge